IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Civil No. 04-CIV-10063-UA

---

In re RCN Corporation, *et al.*,

Debtor-In-Possession.

**DEBRA K. CRAIG,**

**Appellant**

v.

**RCN CORPORATION,**

**Appellee**

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(Robert D. Drain, Judge)

---

**BRIEF OF APPELLANT,
DEBRA K. CRAIG**

---

SARRAF GENTILE LLP
111 John Street
8th Floor
New York, NY 10038

MALAKOFF DOYLE & FINBERG, P.C.
200 Frick Building
437 Grant Street
Pittsburgh, PA  15219

Attorneys for Appellant

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES.................................................................................iii

BASIS FOR APPELLATE JURISDICTION.................................................................1

ISSUE PRESENTED FOR REVIEW........................................................................1

STANDARD OF APPELLATE REVIEW.....................................................................2

STATEMENT OF THE CASE................................................................................2

SUMMARY OF ARGUMENT.................................................................................5

ARGUMENT.................................................................................................7

    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
    AND ABUSED ITS DISCRETION IN DENYING CRAIG'S
    MOTION FOR LEAVE TO FILE PROOF OF CLAIM........................................7

    A.    Legal Background................................................................7

    B.    The Bankruptcy Court Contravened the Clear Holding
        of *Pioneer* in Denying Craig's Claim...............................8

    C.    The *Pioneer* Factors and *Pioneer's* Equitable Excusable
        Neglect Analysis Strongly Support a Finding of Excusable
        Neglect in the Circumstances of this Case.............................9

        1.    The Reason for the Delay Supports a Finding
            of Excusable Neglect.......................................10

        2.    The Absence of Prejudice to the Debtor from
            Late Filing Supports a Finding of Excusable Neglect.......14

        3.    The Mere Six Week Delay in Filing the ERISA Claim
            did not Threaten to Disrupt the Bankruptcy Process.......15

        4.    Craig's Good Faith in Promptly Filing the ERISA
            Claim Once She Was Aware of it Supports a
            Finding of Excusable Neglect...............................16

      5.      Additional Factors Strongly Favor a Finding
of Excusable Neglect........................................................................16

         (a)     Craig's Claim Should Be Deemed Timely
As A Matter of Law, And As A Matter of Discretion,
Because It Was Filed Within The Time Permitted
For The Secretary of Labor To File A Claim.....................................16

         (b)     Failure To Permit The Claim In These Circumstances
Undermines Congressional Intent, Encourages
The Breach of Fiduciary Duties, and Distorts
And Undermines Fiduciary Obligations Under ERISA.....................19

D.      Full Consideration of the *Pioneer* and other Factors
Demonstrate that Craig's Neglect was Excusable.......................................22

CONCLUSION................................................................................................................23

## TABLE OF AUTHORITIES

Page

### CASES

*Antlers Roof-Truss & Builders Supply v. Storie (In re Storie),*
216 B.R. 283, 289 (10th Cir. BAP 1997)........................................................19

*In re Arts Des Provinces De France, Inc.*, 153 B.R. 144,
(Bankr. S.D.N.Y. 1993).....................................................................................13

*Berry Estates, Inc. v. State (In re Berry Estates, Inc.),*
812 F. 2d 67 (2d Cir. 1987).............................................................................20

*Canale v. Yegen*, 782 F. Supp 963 (D.N.J. 1992).....................................3, 12

*Caputo v. Pfizer*, 267 F.3d 181 (2d Cir. 2001)...........................................10

*Carlisle Cashway, Inc. v. Johnson (In re Johnson),*
691 F. 2d 249(6th Cir. 1982)............................................................................19

*In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176 (3d Cir. 2000)................9

*Christopher v. Kendavis Holding Co.*
*(In re Kendavis Holding Co.)*, 249 F. 3d 383 (5th Cir. 2001)........................20

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.1982)....................................11

*Ernst & Young v. Bankr. Serv. Inc. (In re CBI Holding Co., Inc.),*
311 B.R. 350, 360 (S.D.N.Y. 2004)...................................................................2

*Freund v. Marshall & Ilsley Bank,*
485 F. Supp. 629 (W.D.Wis. 1979)....................................................................3

*Herman v. Egea (In re Egea)*, 236 B.R. 734, 744 (Bankr. D. Kan. 1999)...........17, 18, 19

*Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*
188 B.R. 347 (Bankr. S.D.N.Y. 1995)..........................................................13, 20

*In re Infiltrator Systems, Inc.*, 241 B.R. 278, 280-81 (Bankr. D.Conn. 1999)..............10, 15, 22

*In re Interstate Cigar Co.*, 150 B.R. 305 (Bankr. E.D.N.Y. 1993).................21

*Katsaros v. Cody*, 744 F.2d 270 (2d Cir. 1984).........................................12

iii

*Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999)..................................11

*Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir.) ...............................................................4

*Lowen v. Power Asset Mgt., Inc.*, 829 F.2d 1209 (2d Cir. 1987).....................................11

*Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.)*,
166 B.R. 799 (S.D.N.Y. 1994)..........................................................................................14

*Mass. Mut. Life Ins. Co. v. Russell*, 437 U.S. 134, 140-44 (1985).............................4, 17

*Nalco Chemical Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*,
No. 92-8722, 1993 WL 127180 at *1 (S.D.N.Y. April 22, 1993) ...............................1, 2

*In re New Center Hospital*, 200 B.R. 592 (E.D. Mich. 1996) ........................................20

*In re Norris Grain Co.*, 81 B.R. 103 (Bankr. M.D. Fla. 1987).......................................21

*Pennsylvania Dept. Of Public Welfare v. Davenport*, 495 U.S. 522, 559 (1990)............18

*Pension Ben. Guar. Corp. v. Solmsen*, 671 F.Supp 938 (E.D.N.Y. 1987).......................3

*In re Petition of Bd. of Dirs. of Hopewell Int;s Ins., Ltd.*,
275 B.R. 699 (S.D.N.Y. 2002).............................................................................................2

*Pioneer Investment Serv. Co. v. Brunswick Assoc's Ltd. Partnership*,
507 U.S. 380 (1993)................................................................................................... *passim*

*In re PT-1 Communications, Inc.*, 292 B.R. 482
(Bankr. E.D.N.Y. 2003)..............................................................................................10, 16

*Reich v. Davidson Lumber Sales, Inc. Employees Retirement Plan*,
154 B.R. 324, 335 (D. Utah 1993) ...................................................................................18

*In re Sacred Heart Hosp. of Norristown*,
177 B.R. 16 (Bankr. E.D. Pa. 1995)................................................................................22

*In re Sage-Dey*, 170 B.R. 46 (Bankr. N.D.N.Y. 1994)...............................................13, 21

*System 99 Minority Shareholder v. Robison*,
953 F.2d 1388 (Table), 1992 WL 16801, *6 (9th Cir. 1992)............................................12

*In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 755 (D.N.J. 1999).....................15

iv

*U.K. Northridge, Inc. v. Au Coton, Inc. (In re Au Coton, Inc.),*
171 B.R. 16 (S.D.N.Y. 1994).....................................................................................2

*United States v. Norden Systems, Inc.*, 375 F.3d 248 (2nd Cir. 2004)...................2

*Walter v. International Ass'n of Machinists Pension Fund,*
949 F. 2d 310 (10th Cir. 1991).................................................................................17

*Wynder v. McMahon*, 360 F.3d 73 (2nd Cir. 2004).............................................2

## STATUTES

11 U.S.C. § 502(b)(9)..........................................................................................17, 18

28 U.S.C. § 158(a).....................................................................................................1

29 U.S.C. §§ 1100 *et seq* .................................................................. *passim*

## RULES

Fed.R.Bankr.P. 3003(c) ......................................................................................7, 18

Fed.R.Bankr.P. 8013.................................................................................................2

Fed.R.Bankr.P. 9006(b)(1)...................................................................................7, 21

## OTHER AUTHORITIES

9 *Collier on Bankruptcy*, 15th ed., ¶3003.03[4][b] (2004)..................................8

## BASIS FOR APPELLATE JURISDICTION

This Court has jurisdiction to hear appeals of all "final judgments, orders, and decrees" of U.S. Bankruptcy Courts pursuant to 28 U.S.C. §158(a).   The instant appeal is from a Bankruptcy Court order denying a "Motion for Leave to File Proof of Claim."   An order constituting a final decision regarding a creditor's right to file a claim in a bankruptcy proceeding is a final appealable order. *See, e.g., Nalco Chemical Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, No. 92-8722, 1993 WL 127180 at *1 (S.D.N.Y. April 22, 1993) (finding grant of motion to disallow late claim was final appealable order).

## ISSUE PRESENTED FOR REVIEW

Whether the Bankruptcy Court erred as a matter of law, or alternatively abused its discretion, in holding there was no "excusable neglect" to warrant accepting a proof of claim submitted six weeks after the general bar date on behalf of a retirement Savings Plan and its participants and their beneficiaries, based on alleged breaches by the Debtor of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, where:

(1)   under ERISA, legal responsibility to control and manage the Savings Plan is on the Saving Plan fiduciaries, including the Debtor itself, which were obligated to, but failed, to protect the Savings Plan in RCN's bankruptcy;

(2)   the same claim would have unquestionably been timely if filed by the Secretary of Labor, rather than by the Appellant;

(3)   neither a plan participant nor anyone lacking specific ERISA expertise could be expected to know of the existence of the claim, of the intricate requirements of ERISA, or that the Savings Plan fiduciaries would not act in the best interest of the participants; and

(4)   filing the claim late did not disrupt the judicial process since no plan of reorganization had yet been approved nor distributions to creditors yet made.

*Suggested Answer*:  Yes.

1

## STANDARD OF APPELLATE REVIEW

A district court "reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard, but conducts a *de novo* review of the Bankruptcy Court's conclusions of law." *Nalco Chemical Co. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, No. 92-8722, 1993 WL 127180 at *1 (S.D.N.Y. April 22, 1993); *see*, Fed.R.Bankr.P. 8013. Mixed questions of law and fact are also reviewed *de novo*. *Ernst & Young v. Bankr. Serv. Inc. (In re CBI Holding Co., Inc.)*, 311 B.R. 350, 360 (S.D.N.Y. 2004). As a general matter, a district court reviews a bankruptcy court's denial of a motion to file a late proof of claim for abuse of discretion. *See U.K. Northridge, Inc. v. Au Coton, Inc. (In re Au Coton, Inc.)*, 171 B.R. 16, 18 (S.D.N.Y. 1994). An abuse of discretion may be found if the decision under review is based on an error of law or a clearly erroneous finding of fact. *See Wynder v. McMahon*, 360 F.3d 73, 76 (2nd Cir. 2004); *United States v. Norden Systems, Inc.*, 375 F.3d 248 (2nd Cir. 2004). A *de novo* standard applies to questions of statutory interpretation. *See In re Petition of Bd. of Dirs. of Hopewell Int;s Ins., Ltd.,* 275 B.R. 699, 703 (S.D.N.Y. 2002.).

## STATEMENT OF THE CASE

Appellant Debra K. Craig is a participant in the RCN Savings & Stock Ownership Plan (the "Savings Plan"), an employee benefit plan, of the RCN Corporation ("RCN"). (Dkt.# 240, ¶1).[1] RCN is a fiduciary of the Savings Plan under ERISA. *Id.* Craig has alleged in her proof of claim (the "ERISA Claim") that beginning on or about April 1, 2000, RCN and other Savings Plan fiduciaries breached their ERISA fiduciary duties resulting in losses to the Savings Plan in an amount to be determined (estimated in the claim as approximately $26 million). (*See* Dkt.# 240, Ex. 1, Attachment, at 2-3). Those breaches of fiduciary duty pertain to the fiduciaries' alleged failure

---

[1] "Dkt. # __" refers to the docket numbers of the Bankruptcy Court proceedings below.

2

to take appropriate steps with respect to Plan investments in RCN stock once that stock ceased to be prudent because of RCN's mounting debt and other financial problems that led to its bankruptcy filing. *Id.*[2]

On September 22, 2004, Craig filed a "Motion for Leave to File Proof of Claim." (Dkt.# 240). This Motion was denied by Bankruptcy Judge Robert D. Drain by Order entered November 3, 2004. (Dkt.# 352). Appellant timely filed a Notice of Appeal on November 9, 2004.

Craig alleges that RCN failed to protect the assets of the Savings Plan *prior to* RCN's filing for bankruptcy on May 27, 2004, and *during* RCN's bankruptcy proceedings. This failure occurred despite the fact that the Second Circuit has found that ERISA fiduciary duties are the "highest known to the law," *Donovan v. Bierwirth*, 6 F.2d 263, 272 n.8 (2nd Cir.), *cert. denied*, 459 U.S. 1069 (1982), and despite the explicit and fundamental requirement that ERISA fiduciaries "must act for the exclusive benefit of plan beneficiaries." *Id.* Thus, under ERISA, fiduciaries must further the interests of participants, not the purposes of the corporation, *Pension Ben. Guar. Corp. v. Solmsen*, 671 F.Supp 938, 945-46 (E.D.N.Y. 1987), and certainly not their own personal interests. *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629,639 (W.D.Wis. 1979). This could even include the pursuit of claims against themselves. *Canale v. Yegen*, 782 F. Supp 963, 968 n.3 (D.N.J. 1992) ("that this

---

[2] The assertion of an ERISA claim against a bankrupt debtor must, like other kinds of claims, be brought by filing a proof of claim, rather than by filing a complaint, as would be done to initiate an ERISA complaint against a non-bankrupt party. Since the issue here is whether a facially untimely claim should be permitted to be filed, the underlying merits of such a claim are not at issue. Accordingly, the essential elements of Craig's claim should be assumed to be true for purposes of this appeal.

No formal findings of fact or conclusions of law were made in this case, except that the Court found that the facts were "essentially agreed." (Tr. at 28). For the most part, the facts discussed in this section were presented in Appellant's "Motion for Leave to File Proof of Claim" and/or the hearing on that motion and were not disputed by those opposing the Motion.

would require defendants to bring suit against themselves does not relieve them of their fiduciary duties under ERISA").

Despite these governing principles, it is undisputed that RCN did not list this claim in its bankruptcy schedules. (Oct. 27, 2004 Hearing Transcript, Dkt.# 364, ("Tr.") at 12).[3] Nor did RCN inform participants of the existence of ERISA claims against it, and that RCN did not intend to and would not file a claim for them.   RCN also failed to appoint an independent fiduciary to independently investigate and determine whether such a claim should be filed to protect the Savings Plan in view of both the complexity of the such claims and RCN's inherent conflict of interest.[4] Instead, RCN seeks to exonerate itself from liability by relying upon an abbreviated claims bar date of August 11, 2004, (Dkt # 73 at 2), a date of only 2½ months after RCN's bankruptcy filing.  RCN so argues despite the fact that the *very same claim* could be brought by the Secretary of Labor by November 23, 2004 (*i.e.*, within 180 days of the bankruptcy filing, as required by statute).  Under ERISA, a plan fiduciary *or* the Secretary of Labor *or* a plan participant may bring suit to recover, on behalf of the retirement plan, losses resulting from a breach of fiduciary duty.  *Mass. Mut. Life Ins. Co. v. Russell*, 437  U.S. 134, 140-44 (1985) (interpreting ERISA 29 U.S.C. §§1109 & 1132(a)(2)). There is but *one statutory claim* for the same Savings Plan, and *no* reason to cut off the claim simply because it was brought by Craig, and not by the Secretary of Labor.

Craig, alone among the Savings Plan participants, was able to discover the existence of this

---

[3] This is the transcript of the hearing in which the Bankruptcy Court issued the order denying Craig's "Motion for Leave to File Proof of Claim" that is the subject of this appeal.

[4] *Cf. Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir.), recognizing that the intersection of ERISA's prudence requirements with the investment of company stock in an employee stock option plan ("ESOP") was not sufficiently fleshed out so that a full factual record was needed to determine whether a breach of fiduciary duty had occurred.

claim, but not in time to investigate the complex background and file a claim prior to August 11, 2004.[5]   As soon as Craig and her counsel became aware of the ERISA Claim, Craig sought to remedy the Savings Plan fiduciaries' failure to file a claim and to thereby protect the Savings Plan's interests. All of this was done within weeks of the August 11 bar date (Tr. at 11-19), well prior to the November 23, 2004 date by which the *same claim* could be brought by the Secretary of Labor, *for the same Plan*, without even filing a motion.  Plan confirmation was in no manner delayed, and no prejudice has or will result had the Bankruptcy Court permitted Craig's claim.

## SUMMARY OF ARGUMENT

As will be demonstrated below, the Bankruptcy Court's denial of Craig's motion was error as a matter of law and an abuse its discretion.

The Bankruptcy Court's decision turns ERISA, a remedial statute enacted to protect employee retirement and welfare plans from employer abuse, on its head.  Appellant Craig submitted the proof of claim to remedy the failure of Savings Plan fiduciaries to fulfill their fiduciary obligations and protect Savings Plan interests in the bankruptcy process by either filing their own proof of claim, notifying plan participants of the existence of the claim, and/or appointing an independent fiduciary to decide whether to file a claim.  By refusing to accept Craig's claim, the court below has in effect thrust Savings Plan participants into the role of plan administrators and has made them directly responsible for protecting plan interests through all the complexities of the bankruptcy process.  In fact, the burden of protecting benefits falls squarely upon the fiduciaries of

---

[5] Craig was admittedly aware of the August 11 bar date for individual claims.  (Tr. at 13). She timely filed a personal employment discrimination claim against RCN, unrelated to the Savings Plan's claim, on July 2, 2004.  (Dkt.# 352, Ex. A).  However, she was not aware of and did not understand the nature of the potential ERISA Claim prior to the August 11 bar date. ERISA counsel entered this matter only after that bar date had expired.  (Tr. at 11-19).

a plan, and their failure to act on the plan's behalf, in favor of their own interests, should not be rewarded. To do so is contrary to the intent of ERISA.

The Bankruptcy Court's decision was not only contrary to public policy but was also legally flawed because its "excusable neglect" analysis focused almost exclusively on a single factor – whether the failure to file was beyond the claimant's control – that the Supreme Court has held cannot be the sole basis for finding the absence of excusable neglect. A legally correct analysis would find excusable neglect because all other factors were in Craig's favor: there was no prejudice to the debtors, Craig acted in good faith, there was no significant disruption to the bankruptcy process, and there were many mitigating equitable factors including the protection of pensions and other public policy considerations mentioned above. Moreover, the Bankruptcy Court did not sufficiently take into account the unusual situation present here where at least two different entities – Craig and the Secretary of Labor – can submit the very same claim for the very same plan but subject to different bar dates. There is no basis in the policy behind ERISA, the Bankruptcy Code, or logic, to apply the earlier date to artificially bar a claim that was still legally viable and capable of being filed, but only if brought by *another* statutorily authorized party.

Finally, refusing to accept Craig's claim has the inequitable result of rewarding Savings Plan fiduciaries for their wrongful conduct in: (1) failing to perform their duties in the sole interests of the plan and its participants; and, (2) failing to inform participants of their possible claims and of the fiduciaries' intent to take no action. The Savings Plan fiduciaries, including RCN, had an obvious interest in seeing that no claim was filed against them on behalf of the Savings Plan. The Bankruptcy Court's action sends the unfortunate message that plan fiduciaries can ignore their ERISA duties. Courts have found that the equitable mandate not to reward wrongdoing, which is

6

plainly applicable in this case, requires a finding of excusable neglect.  Moreover, any neglect is

excused by the fiduciaries failure to inform participants of their rights and of the fiduciaries neglect

of their duty to protect the participants.

## ARGUMENT

### THE  BANKRUPTCY  COURT  ERRED  AS  A  MATTER  OF  LAW  AND ABUSED ITS DISCRETION IN DENYING CRAIG'S MOTION FOR LEAVE TO FILE PROOF OF CLAIM

As a preliminary matter, it should be emphasized that to Appellant's knowledge this is a case

of first impression.  No published opinion has addressed the important question of whether an

ERISA plan participant should have a late proof of claim deemed timely filed when it has been

submitted as a remedial measure to cure the plan fiduciaries' breach of fiduciary duties in failing to

timely file a proof of claim or take other steps necessary to protect plan interests.  Nor are we aware

of any other case in which the barred claim was still clearly timely, if filed by another entity.

### A.    Legal Background

Bankruptcy Rules 3003(c) and 9006(b)(1) govern requests for extensions of time for filing

proofs of claim.  Rule 3003(c)(3) requires the court to "fix *and for cause shown [] extend the time*

*within which proofs of claim or interest may be filed.*"  (Emphasis added).  Rule 9006(b)(1) governs

extensions of time for acts required to be done within a specified time and provides that if the period

has expired, the act may nevertheless be permitted "where the failure to act was the result of

excusable neglect."

"Excusable neglect" is not defined in the Bankruptcy Code or the Bankruptcy Rules.  In

*Pioneer Investment Serv. Co. v. Brunswick Assoc's Ltd. Partnership*, 507 U.S. 380 (1993), the U.S.

Supreme Court rejected the view that excusable neglect was dependent solely upon the "failure to

7

comply with the court's deadline . . . by circumstances beyond its reasonable control." *Id.* at 388. The Court expressly held that the meaning of "neglect" was considerably broader and the interpretation was "not consonant with either the language of [Fed.R.Bankr.P. 9006] or the evident purposes underlying it." *Id.* Instead, the Supreme Court ruled that the determination of whether any neglect is "excusable" in filing a late proof of claim is "*at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.*" *Id.* at 395 (emphasis added).

Under *Pioneer*, relevant factors to this determination include: (a) the reason for the delay; (b) prejudice to the debtor; (c) the length of the creditor's delay and that delay's potential impact on judicial proceedings; and, (d) whether the movant acted in good faith. *Id.* However, the *Pioneer* makes clear that "all circumstances" and not just the above factors should be considered in the equitable excusable neglect analysis. *Id.*; *see also* 9 *Collier on Bankruptcy*, 15th ed., ¶3003.03[4][b] (2004) (the "Supreme Court's list of relevant factors was not meant to be exclusive, and other courts have cited additional factors in determining whether to grant an extension to a creditor for filing a claim").

**B.**     **The Bankruptcy Court Contravened the Clear Holding of *Pioneer* in Denying Craig's Claim**

Despite *Pioneer*'s clear mandate that excusable neglect determinations are equitable in nature and are not to be decided solely upon a determination of whether the failure to timely file was caused by circumstances beyond the claimant's control, the Bankruptcy Court focused almost exclusively on this factor. In its oral opinion, it recited the four *Pioneer* factors, but treated the "reasonable control" factor as dispositive:

> In any event, *I find here that the filing of a timely proof of claim was within the control of Ms. Craig*, who had actual notice, and

> in fact was represented by employment counsel before the bar date,
> and in fact filed a different proof of claim before the bar date, *and
> that therefore this is not the type of neglect that the rule contemplates
> as being excusable.*

(Tr. at 30 (emphasis added)).  Further, when considering Craig's argument that there would be no

prejudice in allowing Craig's late claim because the Secretary of Labor would have been able to

timely file the ERISA Claim as well, the Bankruptcy Court once again treated the "reasonable

control" factor as dispositive: "Congress obviously gave the Department of Labor a separate right

[to file a claim] for separate reasons, and it may well still choose to do so, *but that again does not

absolve Ms. Craig from having failed to do so when it was clearly within her power . . . ."* (Tr. at

32 (emphasis added)).

The above quotations show that the Bankruptcy Court committed an error of law and abused

its discretion in failing to adequately consider other factors in making its determination. *See, e.g.,

In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 182-83 (3d Cir. 2000) (reversing district court's

finding of the absence of excusable neglect where district court failed to consider all factors and the

totality of circumstances).  This was certainly not a harmless error because, as is discussed *infra*, full

consideration of these other factors shows that Craig's motion clearly should have been granted.  The

Bankruptcy Court's failure to weigh these other factors, and grant Craig's motion, was in error.

**C.    The *Pioneer* Factors and *Pioneer*'s Equitable Excusable Neglect Analysis
Strongly Support a Finding of Excusable Neglect in the Circumstances of this
Case**

A review of the four express *Pioneer* factors, as well as important additional factors unique

to this case, demonstrate that Craig's motion to permit the filing of her claim on behalf of the

Savings Plan should have been granted.

1.     **The Reason for the Delay Supports a Finding of Excusable Neglect**

ERISA claims for plan losses stemming from imprudent investment in company stock are a recent phenomenon and still developing. Moreover, the ability of individual plan participant to file such ERISA claims on behalf of a Plan is not widely known. Recognizing the existence of such claims requires specialized knowledge of ERISA law regarding the extent of duties of ERISA Plan fiduciaries. Craig did not file the ERISA Claim before the bar date because neither she nor her employment counsel were aware of the claim or understood the complexities involved. Nor did they have "actual knowledge" of such a claim sufficient to start the running of the ERISA statute of limitations.[6] 29 U.S.C. §1113(2). However, after the bar date, once ERISA counsel became involved in the case, Craig moved as soon as she could (her counsel had to gather and analyze relevant facts) for leave to file the ERISA Claim. Thus, Craig did not consciously disregard the bar date with respect to this claim. (Tr. at 11-19).

Courts in the Second Circuit have found that lack of awareness of a claim prior to the bar date can be a reason for delay that supports a finding of excusable neglect. *In re PT-1 Communications, Inc.*, 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003); *In re Infiltrator Systems, Inc.*, 241 B.R. 278, 280-81 (Bankr. D.Conn. 1999).

Even if Craig's lack of awareness of her claim prior to the bar date did not, standing alone, warrant a finding of excusable neglect, the nature of this claim, and its legal and factual complexity,

---

[6] Under the law of this Circuit, to have actual knowledge of an ERISA fiduciary breach claim sufficient to start the running of the ERISA statute of limitations, one must have "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty." *Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir. 2001). To be in possession of such actual knowledge "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they] sued]." *Id.* (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)).

10

favor a finding that her neglect was excusable. Moreover, as explained below, the failure of the plan

fiduciaries to protect the Savings Plan directly, or to even inform the participants of their potential

claims and of the fiduciaries' failure to act, excuses Craig from not sooner discovering this claim.

The standard of care owed by ERISA fiduciaries to plan participants has been described as

"the highest known to law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir.1982) (Friendly,

J.). ERISA's fiduciary duty provisions expressly require that a fiduciary shall discharge its duties

with respect to a plan solely in the interest of the participants, for the exclusive purpose of providing

benefits to participants, and "with the care, skill, prudence, and diligence under the circumstances

then prevailing that a prudent man acting in a like capacity and familiar with such matters would use

in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1).

ERISA also imposes upon fiduciaries a "duty to inform," which "entails not only a negative duty not

to misinform, but also an affirmative duty to inform when the trustee knows that silence might be

harmful." *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, 548 (6th Cir. 1999) (quoting *Bixler v.*

*Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

Moreover, the Second Circuit Court of Appeals has made clear that ERISA fiduciaries, and

not plan participants, have the entire responsibility to manage the plan and protect its assets:

> ERISA was deliberately structured so that legal responsibility for
> management of ERISA plans would be clearly located. ERISA §1102(1) thus
> directs that every plan designate a "named fiduciary" with power "to control and
> manage" the plan. Congress included this requirement "so that responsibility for
> managing and operating the Plan—and liability for mismanagement—are focused
> with a degree of certainty." *Birmingham v. Sogen-Swiss Int'l Corp. Retirement Plan*,
> 718 F.2d 515, 522 (2d Cir.1983).

*Lowen v. Power Asset Mgt., Inc.*, 829 F.2d 1209, 1218-19 (2d Cir. 1987).

Because of these extraordinary duties required of ERISA fiduciaries toward plan participants,

11

plan fiduciaries have an obligation to take appropriate steps to protect plan assets. These steps include taking actions to see that claims the plan may have against its own fiduciaries are protected from being barred by failure to meet legal deadlines. *System 99 Minority Shareholder v. Robison*, 953 F.2d 1388 (Table), 1992 WL 16801, *6 (9th Cir. 1992) (ERISA retirement plan's fiduciaries had duty to timely bring suit against other plan fiduciaries to prevent plan's claim from being barred by the statute of limitations). In fact, ERISA specifically empowers plan fiduciaries (as well as the Secretary of Labor and plan participants) to bring suits to recover, on behalf of the plan, plan losses resulting from a breach of fiduciary duty. 29 U.S.C. §§1109 & 1132(a)(2). *See, Canale v. Yegen*, 782 F.Supp. 963, 968 n. 3 (D.N.J. 1992) ("that [bringing a derivative action] would require defendants to bring suit against themselves does not relieve them of their fiduciary duties under ERISA"). As a possible alternative, a plan fiduciary's ERISA duties might require the appointment of an independent fiduciary to make administrative or investment decisions when the plan fiduciary either lacks expertise or is conflicted. *See, e.g., Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (affirming district court's holding that plan fiduciaries should have appointed independent fiduciary to evaluate prudency of investment decision).

Accordingly, the Savings Plan fiduciaries, including RCN, had (and have) a direct obligation to protect the Savings Plan and its participants by taking steps to protect any claims the Savings Plan might have against RCN as a Savings Plan fiduciary. These steps should have included some combination of: (i) timely filing a proof of claim, (ii) avoiding the Savings Plan fiduciaries' conflict of interest by appointing an independent fiduciary to determine whether to file such a claim, and/or (iii) informing Savings Plan participants of the existence of the Savings Plan's potential claim against its fiduciaries and the possibility that it might be extinguished by the bankruptcy proceedings.

12

However, RCN and other Savings Plan fiduciaries failed to take any of these critical steps here to protect the Savings Plan's claims.

The failure of Savings Plan fiduciaries to fulfill their overriding duties to administer the plan and act on behalf of and solely in the interests of plan participants clearly excuses any failure by Craig to have discovered the ERISA Claim sooner. *See, e.g., Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 188 B.R. 347, 355 (Bankr. S.D.N.Y. 1995) (debtor's concealment of information necessary for creditor to discover existence of claim established excusable neglect because "it would be inequitable to permit debtor to profit from its alleged wrongdoing by barring the late filed claims"); *In re Sage-Dey*, 170 B.R. 46, 52 (Bankr. N.D.N.Y. 1994) (debtor's failure to provide IRS with information necessary for IRS to discover its claim supported finding of excusable neglect since it "would be inequitable to permit the Debtors to benefit from their own error, whether intentional or unintentional"); *In re Arts Des Provinces De France, Inc.*, 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993) (when debtor's action contributes to creditor's failure to timely file proof of claim, excusable neglect will be established; "debtors may not assume the role of righteous indignation when they contributed to the confusion"). Plan participants are thus assured by the structure of the plan administration and fiduciary guarantees developed under ERISA that they may expect their plan fiduciaries to take all necessary steps to protect plan assets. Moreover, Savings Plan fiduciaries obviously have superior access to relevant information and are thus much better equipped than individual plan participants to file an appropriate claim.

Thus, finding that Craig's delay is excusable neglect is consistent with ERISA. Rejecting her excuse undermines those policies and rewards RCN for its inaction. The Bankruptcy Court's ruling effectively prevents ERISA plan participants such as Craig from effecting remedial measures

13

to cure breaches of duty by ERISA fiduciaries in failing to protect plan claims in bankruptcy proceedings. It also improperly shifts from plan fiduciaries to plan participants equal, if not greater, responsibility for the plan's administration and for the protection of plan assets since, under that ruling, plan participants, despite an inferior access to information and lack of expertise, are now expected to be just as vigilant as – if not more so – the plan fiduciaries themselves in monitoring the complexities of the bankruptcy process and judging its likely effects on plan interests. Such a rule turns ERISA on its head.

### 2.    The Absence of Prejudice to the Debtor from Late Filing Supports a Finding of Excusable Neglect

Though Craig's claim, if successful, may result in sharing in the bankruptcy estate assets, it is well settled that the mere sharing in assets otherwise available for timely filed claims does not constitute prejudice to the debtor for purposes of an excusable neglect analysis. Were "it otherwise, virtually all late filings would be condemned by this factor." *Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994). Accordingly, the question with respect to this factor is not whether there is some detriment to the debtor by allowing the late claim, but whether there is *undue* prejudice.

There would have been no undue prejudice to the Debtor if the Bankruptcy Court allowed the ERISA Claim. This is sufficiently demonstrated by the fact that the ERISA Claim could have been brought by the U.S. Secretary of Labor as well as a plan participant on behalf of the plan. 29 U.S.C. §1132(a)(2). The claims bar date for governmental units set by the Bankruptcy Court (and as required by the Bankruptcy Code) was November 23, 2004. (Dkt.# 73 at 2). Thus, the *same* claim could have been timely filed by the Secretary of Labor up to two months *after* Craig made her

14

September 22 motion.[7]  Since the claim would have the same legal effect regardless of who filed it, there was no prejudice to the Debtor.  In short, the Debtor had no legal right or expectation that such potential claim could not be filed, at least until after November 23, 2004.  Mere *hope* that such a claim would not be filed by the Secretary of Labor cannot suddenly becomes *undue* prejudice simply because a different entity was responsible for asserting such a claim.[8]

> **3.    The Mere Six Week Delay in Filing the ERISA Claim did not Threaten to Disrupt the Bankruptcy Process**

The length of delay prong of the *Pioneer* test "analyzes the length of the delay and the impact on the judicial proceedings that a late claim would have."  *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 755 (D.N.J. 1999) (citations omitted).  The length of delay is "significant primarily insofar as it may disrupt the judicial administration of the case or show lack of good faith on the part of the movant."  *In re Infiltrator Sys.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999).

Craig promptly moved to file the ERISA Claim six weeks after the bar date, which was as soon as she could given that she become aware of  the potential claim after the bar date and her counsel required time to gather and analyze sufficient facts to file an appropriate claim.  Such filing (and motion) did not disrupt the judicial process.  Craig's motion was filed before any plan of reorganization had been approved and prior to any distribution to creditors.  (Dkt.# 240, ¶14).

---

[7]  Additional implications also arise from the fact that the government could have filed the same claim as a matter of right both at the time of Craig's motion and at the time of the Bankruptcy Court's ruling, as discussed in Section 5(a) *infra*.

[8] In its oral opinion the Bankruptcy Court asserted, without making clear how it was relevant to the excusable neglect analysis, that permitting "late class claims raises particular concerns."  (Tr. at 30).  However, denying Craig's motion because it is a class claim ignores the fact that the Secretary of Labor could have filed the same claim.  Any "concerns" raised by the filing of the ERISA Claim (by the Secretary of Labor or Craig) would have simply been a foreseeable part of the normal legal process, and not a special concern raised by Craig's motion.

Indeed, claims against affiliated debtors were not yet due when the motion was filed (the bar date for them was October 1, 2004). (Dkt.# 185). Moreover, as discussed above, the same claim could have been timely filed by the Secretary of Labor up to a month after the time Craig filed her motion, so the Debtor had to factor the possibility of such potential filings into its reorganization. Any disruptions to the judicial process would be normal and of the type that the parties to the bankruptcy proceedings knew were possible even after the individual bar date.

> **4.    Craig's Good Faith in Promptly Filing the ERISA Claim Once She Was Aware of it Supports a Finding of Excusable Neglect**

Craig has acted in good faith in making this claim. She became aware of the ERISA Claim after the bar date and acted promptly once she was aware. After a hasty, but adequate, investigation, her attorneys prepared the ERISA Claim and related motion only six weeks after the bar date. Courts have found that claimants who discover their claims after the bar date act in good faith when they file their claims reasonably promptly. *See, e.g., In re PT-1 Communications, Inc.*, 292 B.R. 482, 489-90 (Bankr. E.D.N.Y. 2003) (claimant acted in good faith when it discovered the existence of its claim after the bar date and filed its claim within three and a half months of the discovery date).

> **5.    Additional Factors Strongly Favor a Finding of Excusable Neglect**

As noted above, the *Pioneer* factors are not intended to be exclusive, and additional factors in this case support a finding of excusable neglect, both as a matter of law and of sound discretion.

> **(a)    Craig's Claim Should Be Deemed Timely As A Matter of Law, And As A Matter of Discretion, Because It Was Filed Within The Time Permitted For The Secretary of Labor To File A Claim**

Because of the unique characteristics of the ERISA enforcement provisions and the *identity* of Appellant's claim with any claim that the Secretary of Labor might have filed, the ERISA Claim

should be deemed timely filed by virtue of its compliance with section 502(b)(9) of the Bankruptcy Code. That section provides that "a *claim* of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief..." 11 U.S.C. § 502(b)(9) (emphasis supplied).

In the usual situation, governmental units and private parties cannot assert the same claim. Here, however, Craig's is *one and the same* as any claim that the Secretary of Labor might have brought, and as noted, Craig's claim was tendered within 180 days of RCN's bankruptcy petition, *i.e.,* prior to November 23, 2004. Therefore, the Bankruptcy Court erred in not allowing Craig to file the claim within that time frame.

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides a unique enforcement provision under which neither the employee benefits plan itself, nor participants may bring actions *in their individual capacities* to recover for fiduciary breaches. *Herman v. Egea (In re Egea)*, 236 B.R. 734, 744 (Bankr. D. Kan. 1999) (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985); *Walter v. International Ass'n of Machinists Pension Fund*, 949 F. 2d 310, 316-17 (10th Cir. 1991)). Instead, ERISA provides for actions to be brought in a representative capacity on behalf of the benefits plan as a whole. *Russell*, 473 U.S. at 142, n.9. ERISA confers standing upon four types of entities to bring a representative action to recover for the plan, namely an action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a)(2). Courts have recognized that this representative claim is identical regardless of the party who asserts it. "Identically situated, all four classes of plaintiffs share the common interest in the financial integrity of the plan." *Herman*, 236 B.R. at 742.

The Bankruptcy Code's definition of "claim" supports the conclusion that Appellant's claim represents the identical debt that could be asserted by the Department of Labor, and thus should be

17

deemed timely filed.  Under the Bankruptcy Code, a "claim" is defined as a "right to payment" or

a "right to an equitable remedy for breach of performance if such breach gives rise to a right to

payment." 11 U.S.C. § 101(5).  The Supreme Court has explained that "'right to payment' [means]

nothing more nor less than an enforceable obligation . . ." *Pennsylvania Dept. Of Public Welfare*

*v. Davenport*, 495 U.S. 522, 559 (1990).  Moreover, the meaning of the terms "claim" and "debt"

are coextensive.  *Id.* at 558.

Here, the "debt" (represented by the corresponding "claim") is owed neither to the

Department of Labor nor to Appellant, but rather to the Savings Plan.  *Reich v. Davidson Lumber*

*Sales, Inc. Employees Retirement Plan*, 154 B.R. 324, 335 (D. Utah 1993) ("The Secretary does not

seek in this action to offset a debt owed by himself . . . but merely to offset the *Plan's* debt to

Davidson against Davidson's alleged debts to the Plan.") (emphasis in original).  The "right to

payment" is an "ability to enforce" granted alternatively to the Department of Labor, participants

such as Appellant, or fiduciaries, such as RCN.  *Egea*, 236 B.R. at 744.  Filing the claim  to enforce

that debt was not terminated by virtue of the individual claims bar date, because the Department of

Labor had the right to assert it.  The Saving Plan's right to payment was still assertable, and RCN

could not expect that it would be relieved of liability on that claim.  Moreover, the Savings Plan is

entitled to but a single recovery –  to be made whole for its losses – whether the "claimant" was the

Secretary of Labor, another plan fiduciary, a participant or a beneficiary.  The fact that Craig filed

the claim, rather than the Department of Labor, should not cause it to be extinguished.[9]

---

[9] Notably, the Bankruptcy Code describes the dates for barring claims in terms of the nature of the claim, not the claimant.  Rule 3003(c) refers to the "time in which proofs of claim or interest may be filed[;]" not the "time in which claimants may file."  Similarly, Bankruptcy Code § 502(b)(9) refers to "a claim of a governmental unit . . ." not "a claim filed by a governmental unit."  Thus, because the unique claim here, where the right to payment is not

Lastly, the Bankruptcy Code's assurance that the types of claims that might be asserted by governmental units are granted 180 days from the date of the debtor's order of relief reveals a fundamental policy of protecting such claims.  In the context of breaches of fiduciary duty, the Bankruptcy Code evinces a strong policy in favor of allowing such claims because "[i]t would simply be against public policy to allow persons occupying fiduciary relations to be excused for debts that arise as a result of their failure to act according to the standard of care imposed on them by law." *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 289 (10th Cir. BAP 1997); *Egea*, 236 B.R. at 735.  Appellant's filing of this claim should not alter the protection provided the claim.  The claim should therefore be deemed timely by virtue of its filing prior to 180 days after RCN's order for relief.

    **(b)**    **Failure To Permit The Claim In These Circumstances Undermines Congressional Intent, Encourages The Breach of Fiduciary Duties,  and Distorts And Undermines Fiduciary Obligations Under ERISA**

A consideration of the circumstances and equities here counsels in favor of allowing Craig's claim.  Breaches of fiduciary duty, whether negligent or intentional, constitute wrongdoing the Bankruptcy Code was not intended to shield.  "[T]he requisite "badness" to conform with the spirit of the bankruptcy laws, is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties." *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F. 2d 249, 256 (6th Cir. 1982); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 289 (10th Cir. BAP 1997).  The

---

possessed by the claim filer, but rather by the plan the claimant represents, the nature of the claim is identical whether filed by the Department of Labor or a participant, and should be subject to the 180 day time period.

Bankruptcy Court erred in ignoring the dangerous implications of so easily allowing a fiduciary to be exonerated for breaching its duties. *See Christopher v. Kendavis Holding Co. (In re Kendavis Holding Co.)*, 249 F. 3d 383 (5th Cir. 2001) (refusing to apply discharge injunction to an ERISA plan participant's claim despite his notice of the bankruptcy, because special considerations exist "when the debtor is a large corporation who owes a fiduciary duty to the individual claimant.").[10]

A finding of excusable neglect is especially applicable to Craig's claim because, as explained above, RCN not only failed to take action to pursue such a claim itself, but also failed to inform participants of the possible existence of such a claim, or to engage an independent fiduciary. As noted, RCN retained a duty to act solely in the interests of the Savings Plan during bankruptcy. *See, In re New Center Hospital*, 200 B.R. 592 (E.D. Mich. 1996) (explaining that a bankruptcy trustee must stand in the shoes of the debtor in continuing to administer ERISA plans in the sole interest of the plan).

Preventing Craig from filing the ERISA Claim rewards wrongdoing. By failing to file a proof of claim or inform participants of the existence of the potential claim, the Savings Plan fiduciaries were helping to protect themselves and RCN from liability for ERISA fiduciary breach claims. Courts have found that the equitable requirement not to reward wrongdoing can establish excusable neglect. *See, e.g., Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 188 B.R. 347, 355 (Bankr. S.D.N.Y. 1995) (debtor's concealment of information necessary for creditor to discover existence of claim established excusable neglect because "it would be inequitable to

---

[10] Congress did not intend "that the bankruptcy court be a haven for wrongdoers." *Berry Estates, Inc. v. State (In re Berry Estates, Inc.)*, 812 F. 2d 67, 71 (2d Cir. 1987).

permit debtor to profit from its alleged wrongdoing by barring the late filed claims").[11]

Finally, granting permission to file a late proof of claim under the unique circumstances of this case will *not* encourage creditors to "freely ignor[e] court-ordered deadlines in the hopes of winning a permissive reprieve under [Fed.R.Bankr.P.] 9006(b)(1)," *Pioneer Investment Serv. Co. v. Brunswick Assoc's Ltd. Partnership*, 507 U.S. 380, 395 (1993). This case only concerns: (i) the filing of ERISA claims; (ii) where ERISA plan fiduciaries had a duty to protect such claims; (iii) where the Secretary of Labor could have timely filed the same claim when the motion to permit the filing was made; (iv) where the claim is late by only a few weeks; (v) where the claim is a remedial measure to cure a fiduciary breach; (vi) where the claimant acted in good faith; and, (vii) where rejecting the claim would violate clear Congressional policy that plan fiduciaries, and not plan participants, have the primary responsibility for determining whether such claims exist and protecting plan assets.[12]

---

[11] *See also, In re Sage-Dey, Inc.*, 170 B.R. 46 (Bankr. N.D.N.Y. 1994) (delay of the IRS in filing a claim was excusable where the debtor had failed to disclose tax liability, stating "*It would be inequitable to permit the Debtors to benefit from their own error, whether intentional or unintentional.*" Id. at 52); *In re Interstate Cigar Co.*, 150 B.R. 305, 310 (Bankr. E.D.N.Y. 1993) (allowing the Pension Benefits Guaranty Corporation to file a late ERISA claim because the debtor had failed to disclose its liabilities); *In re Norris Grain Co.*, 81 B.R. 103, 109 (Bankr. M.D. Fla. 1987), *aff'd*, 131 B.R. 747 (M.D. Fla. 1990).

[12] In his bench opinion the Bankruptcy Court Judge stated that:

> The facts are essentially agreed, Ms. Craig, as well as, I assume, the other potential members of the class which the claim would seek to be on behalf of, received actual notice of the bar date.

(Tr. at 28). The bankruptcy judge's factual assumption that other members of the class received notice of the bar date was made in the absence of record evidence on this matter. Given this lack of evidence, many class members did not receive notice or have knowledge of the bar date. Nor, in any event, would a bare notice of the bar date inform class members of the RCN's failure to perform its fiduciary duties under ERISA. Denying Craig's motion to file a class proof of claim

21

**D.      Full Consideration of the *Pioneer* and other Factors Demonstrate that Craig's Neglect was Excusable**

All of the express *Pioneer* factors and additional factors above, with one exception, strongly favor granting Craig's motion to file the ERISA Claim.  The sole exception is the extent to which filing the claim before the bar date was beyond Craig's control.  However, as was discussed above, the *Pioneer* Court expressly held that a court should not find the absence of excusable neglect simply because this single factor is not met.  Moreover, the fact that ERISA is explicitly designed to place the burden of such investigations and actions to protect pension plans on fiduciaries, as opposed to plan participants, excuses Craig's failure to take such actions.  Furthermore, as noted in *In re Infiltrator Sys.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999), "*Pioneer* does not require the movant to be entirely without fault before a court may find there was excusable neglect." *Id.*

For the reasons discussed above, the Bankruptcy Court committed an error of law and abused its discretion by denying Craig's motion simply because filing a proof of claim was not "beyond her control."

---

would unfairly punish other class members. *Cf. In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) ("a class claim and motion which has the effect of expanding the bar date for unnotified creditors is often appropriate to comport with due process of law").

## CONCLUSION

For the reasons stated above, this Court should reverse the Bankruptcy Court's order denying Craig's Motion for Leave to File Proof of Claim and order Craig's Motion be granted and her ERISA Claim be deemed timely filed.

Dated: January 4, 2005
        New York, New York

                              Respectfully submitted,

                              Ronen Sarraf (RS 7694)
                              Joseph Gentile
                              SARRAF GENTILE LLP
                              111 John Street, 8th Floor
                              New York, NY 10038
                              (212) 433-1312

                              MALAKOFF DOYLE & FINBERG, P.C.
                              Richard A. Finberg
                              Ellen M. Doyle
                              James A. Moore
                              200 Frick Building
                              437 Grant Street
                              Pittsburgh, PA  15219
                              (412) 281-8400

                              *Attorney for Appellant Debra K. Craig*

23

## Certificate of Service

The undersigned hereby certifies that on January 4, 2005, true and correct copies of the foregoing Brief of Appellant were served by first class U.S. postage on the following persons:

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Bennett Scott Silverberg
Frederick D. Morris
Jay M. Goffman
Four Times Square
New York, NY 10036

DECHERT LLP
David C. McGrail
30 Rockefeller Plaza
New York, NY 10112-2200

MILBANK, TWEED, HADLEY & McCLOY, LLP
Deirdre Ann Sullivan
Dennis F. Dunne
1 Chase Manhattan Plaza
New York, NY 10005

OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street, 21st Floor
New York, NY 10004
Attention: Paul K. Schwartzberg, Esq.

Ronen Sarraf